UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. FILTER/JWI, INC.,

    Plaintiff,

v.

J-PARTS, LLC et al.,

    Defendants.
    _____/

File No. 5:03-CV-127

HON. ROBERT J. JONKER

EVOQUA WATER TECHNOLOGIES LLC,

    Plaintiff,

v.

M.W. WATERMARK, LLC et al.,

    Defendants.
    _____/

File No. 1:16-CV-14

HON. ROBERT J. JONKER

## OPINION

In 2003, U.S. Filter/JWI, Inc. sued one of its competitors, J-Parts, LLC, and J-Parts' owner, Michael Gethin (File No. 5:03-CV-127). U.S. Filter claimed that Gethin and J-Parts had misused U.S. Filter's trademarks and proprietary information. J-Parts subsequently changed its name to M.W. Watermark, LLC, and the parties eventually settled the case. As part of the settlement, the parties agreed to the entry of a judgment and permanent injunction prohibiting Gethin and Watermark from using certain trademarks and proprietary information belonging to U.S. Filter. (*See* Final J. & Permanent Inj., No. 5:03-CV-127, ECF No. 24.)

Thirteen years later, Evoqua Water Technologies LLC filed a new suit against Gethin and Watermark (File No. 1:16-CV-14), claiming that Evoqua is the successor-in-interest to U.S. Filter, and alleging that Watermark and Gethin were in violation of the permanent injunction. Among other things, Evoqua asked for civil contempt sanctions against Watermark and Gethin. The Court held a hearing in the new case and found that Watermark and Gethin had violated the terms of the injunction. As part of its civil contempt sanction, the Court directed Watermark and Gethin to pay Evoqua's reasonable attorney's fees for bringing the new lawsuit and its motion for sanctions. No party at the time questioned whether a proceeding for contempt properly belonged in a new case with a new party plaintiff, or whether a proceeding in the original action with the original plaintiff was necessary.

Watermark subsequently asked the Court to modify or dissolve the permanent injunction, and Evoqua sought to substitute itself as the plaintiff in 5:03-CV-127. In response to Evoqua's motion, Watermark disputed Evoqua's contention that Evoqua is the successor-in-interest to U.S. Filter, an issue that it first raised in its answer to Evoqua's complaint but did not litigate in response to Evoqua's request for sanctions. The Court denied both motions without prejudice because it wanted to ensure that all interested parties were before the Court. The Court asked the parties to provide further briefing on whether Evoqua is, in fact, the successor-in-interest to U.S. Filter. After the parties did so, it became clear that Evoqua claims to be the successor-in-interest to U.S. Filter based on a series of corporate mergers and an assignment of assets.[1]

---

[1] U.S. Filter merged into Siemens Water Technology Corporation, which merged into Siemens Water Technology Holding Corporation, which merged into Siemens Industries, Inc. In 2013, Siemens Industries assigned the assets of its water-technologies business unit to Siemens Water Technologies LLC, which changed its name to Evoqua Water Technologies LLC, the plaintiff in 1:16-CV-14.

2

The Court then asked the parties to brief the following questions: (1) whether the consent judgment is assignable; (2) whether the consent judgment was actually assigned; and (3) whether the contempt finding should be vacated if there was no effective assignment. The parties have filed their briefs in response to the Court's order. They have also filed motions asking the Court to seal certain portions of their briefs and exhibits thereto. (No. 5:03-CV-127, ECF Nos. 46, 51, 55.)

Upon review, the Court finds that the consent judgment may not be enforced by Evoqua as an assignee of U.S. Filter. Consequently, the contempt finding in 1:16-CV-14 must be vacated because Evoqua lacks standing to enforce the injunction. In addition, the motions to seal will be granted in part and denied in part.

**I. Evoqua's Right to Enforce the Consent Judgment**

A party's ability to enforce a consent judgment raises an issue of standing. "[A] well-settled line of authority . . . establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefit[t]ed by it." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750 (1975). Generally, "third parties, even intended third-party beneficiaries, lack standing to enforce their interpretations of agreed judgments." *Sanders v. Republic Servs. of Ky., LLC*, 113 F. App'x 648, 650 (6th Cir. 2004).

To determine whether a consent judgment can be enforced by an assignee of one of the parties, the Court looks to the language of the consent judgment itself. "A consent judgment is a hybrid of a contract and a judicial act." *Universal Settlements Int'l, Inv. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 404 (6th Cir. 2014) (citing *Local No. 93, Int'l. Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986)). "It mirrors a contract in that it reflects 'an agreement by the parties,' and it is a judicial act because it 'places the power and prestige of the court behind

the compromise struck by the parties.'" *Id.* (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). "As a judicial act, consent judgments must be 'strictly construed to preserve the bargained for position of the parties.'" *Id.* (quoting *Williams*, 720 F.2d at 920).

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, *the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it*.

*United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) (emphasis added; footnote omitted); *accord Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 530 (6th Cir. 2012).

The consent judgment in this case does not provide for enforcement by an assignee of U.S. Filter. It binds the "successors and assigns" of Watermark and Gethin (No. 5:03-CV-127, ECF No. 24, PageID.356), but includes no similar language pertaining to U.S. Filter. The judgment itself is in favor of only U.S. Filter, not its successors and assigns.

In a similar case, the Federal Circuit held that an assignee of a party to a consent judgment could not enforce it because "nothing expressly set out in the consent judgment . . . extend[ed] [those enforcement] rights to any third party[.]" *Thatcher v. Kohl's Dep't Stores, Inc.*, 397 F.3d 1370, 1375 (Fed. Cir. 2005). As in this case, the consent judgment in *Thatcher* resulted from the settlement of claims regarding the infringement of intellectual-property rights. Like Evoqua, the party seeking to enforce the consent judgment in *Thatcher* claimed to acquire those intellectual-property rights by

4

assignment. *Id.* at 1373. And like the consent judgment in this case, the consent judgment in *Thatcher* enjoined the "successors-in-interest" of one party, but said nothing about whether successors-in-interest of the other party could enforce it. *Id*. at 1375. "This silence," the court held, "is the functional equivalent of the parties' express intent to exclude language of assignment." *Id*. Likewise, this Court interprets the absence of any reference to the successors and assigns of U.S. Filter in the consent judgment, coupled with express language binding Watermark's successors and assigns, as precluding enforcement by Evoqua, an assignee of U.S. Filter. The enforcement rights of the consent judgment belong to U.S. Filter alone.

Evoqua points to the settlement agreement between U.S. Filter and Watermark, which states that "[t]he terms of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs and assigns." (Settlement Agreement, No. 1:16-CV-14, ECF No. 1-8, PageID.365.) However, "Agreement" is defined as "This Settlement Agreement and Mutual Release." (*Id*.) It does not include the consent judgment itself. Indeed, the settlement agreement requires the parties to stipulate to entry of a judgment and permanent injunction "in the form *attached to* this Agreement," which necessarily means that the consent judgment is separate from the settlement agreement. (*Id.* at PageID.362 (emphasis added).) Moreover, the consent judgment does not refer to, or incorporate, the terms of the settlement agreement. Thus, unlike the settlement agreement, the consent judgment does not "inure to the benefit" of U.S. Filter's successors and assigns. The parties could have included such language in the consent judgment, but they did not do so. The Court will give effect to the consent judgment as it is written.

Evoqua also relies on Rule 25(c), which provides that the Court may substitute a party to whom "an interest is transferred" for the original party in the case. Fed. R. Civ. P. 25(c). Evoqua

5

claims that it is the recipient of an interest from U.S. Filter and should be substituted for U.S. Filter in 5:03-CV-127 so that it can enforce the permanent injunction. As Evoqua itself recognizes, however, Rule 25(c) "is merely a procedural device designed to facilitate the conduct of the case, [it] does not alter the substantive rights of the parties or the transferee." (Evoqua's Br. 11, No. 5:03-CV-127, ECF No. 48.) *See* 7C Charles Alan Wright et al., Federal Practice and Procedure § 1952 (3d ed. 2017 supp.) ("Rule 25 is procedural. It does not provide for the survival of rights or liabilities but merely describes the method by which the original action may proceed if the right of action survives."). Thus, Rule 25(c) does not determine whether Evoqua can enforce the consent judgment.

Evoqua compares this case to a situation in which a plaintiff in a pending case transfers all of its assets to a third party, and then the third party substitutes itself as the plaintiff and receives the benefit of an existing preliminary injunction. *See Lucero v. Trosch*, 121 F.3d 591, 596 (11th Cir. 1997). But the analogy is not apt. The difference here is that the parties in 5:03-CV-127 entered into an agreement to resolve their claims. The agreement included entry of a consent judgment and injunction extending to the successors and assigns of Watermark but not U.S. Filter. Perhaps if the original case was still open and unresolved, Evoqua could substitute itself for U.S. Filter and then determine how best to resolve the matter, consistent with *Lucero*. But here, U.S. Filter and Watermark resolved the case long ago. Evoqua cannot now insert itself as a party to the consent judgment, or expand the scope of the agreed-upon judgment to give itself enforcement rights.

Evoqua complains that the result in *Thatcher* forces parties who want to transfer enforcement rights under a consent decree to use a statutory merger rather than a sale of assets even if there are other good transactional reasons favoring a sale of assets. But even assuming this is a shared concern

of the parties,[2] it is easily addressed by the language of the consent judgment itself. The parties can simply draft a consent decree that expressly applies to the successors and assigns of all parties. Nothing in *Thatcher* would prevent enforcement by a true assignee in that case.

Because Evoqua lacks standing to enforce the U.S. Filter consent judgment, the Court must vacate the order that granted Evoqua's motion for sanctions and found Watermark and Gethin in contempt of court. Because it lacks standing, Evoqua was not entitled to seek sanctions for violating the permanent injunction. For the same reason, the Court must dismiss Count I of Evoqua's complaint in 1:16-CV-14, which seeks relief based on the permanent injunction. This does not mean that Evoqua lacks standing to enforce the settlement agreement itself, which may or may not provide a contractual basis for relief independent of the consent judgment, assuming Evoqua can establish it is an assignee of the agreement. Furthermore, this does not prevent Evoqua from enforcing any intellectual-property rights that it obtained from U.S. Filter, in an appropriate cause of action. It simply means that Evoqua cannot pursue a claim for an alleged violation of the permanent injunction entered in favor of U.S. Filter.

Another consequence is that there is no reason or basis for the Court to substitute Evoqua as the plaintiff in 5:03-CV-127. That case is closed because of a settlement and consent judgment. Evoqua lacks standing to enforce the consent judgment. It may seek to enforce the settlement agreement itself as a breach of contract, but substituting Evoqua as the plaintiff in the original case would serve no purpose.

---

[2]The party restrained by the injunction would likely be more inclined to impose limits on who can enforce the injunction, and might try to negotiate a judgment that limited enforcement to the original plaintiff. After all, a restrained party has no control over who the original party selects as an assignee, and the restrained party may be substantially more burdened by enforcement by an assignee than by the original plaintiff.

**II. Motions to Seal**

Evoqua and Watermark ask the Court to seal the settlement agreement and the agreement assigning assets from Siemens Industry to Siemens Water Technologies ("Carve-Out Agreement"), as well as the portions of their briefs that discuss these documents.

A document filed with the Court becomes a judicial record. *Pansy v. Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994). "When a district court relies upon a document 'in determining the litigants' substantive rights, and in performing its adjudicatory function . . . [t]he common law presumption of public access' attaches to the document." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 690 (W.D. Mich. 1996) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (alteration in original)). A court's decision to seal a record is governed by a balancing test that generally favors public availability. *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983) (holding that only the most compelling reasons justify nondisclosure of judicial records).

To determine whether a party has overcome the presumption of access, the Court balances the public's interest against the interest in confidentiality. *Picard*, 951 F. Supp. at 691 (citing *Matter of Continental*, 732 F.2d 1302, 1313 (7th Cir. 1984)). The "preference for public access is rooted in the public's first amendment right to know about the administration of justice." *Id*. (quoting *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994)). Public access "helps safeguard 'the integrity, quality and respect in our judicial system' and permits the public to 'keep a watchful eye on the workings of public agencies.'" *Id.* (quoting *Orion*, 21 F.3d at 26). "The public's focus is not only on the litigation's result, but 'also on the conduct giving rise to the case,' and in both circumstances, 'the public is entitled to assess for itself the merits of judicial decisions.'" *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).

**A. Settlement Agreement**

Evoqua argues that the Court should seal the settlement agreement, and any references to it in the parties' briefs, because there is no tradition of public access to settlement negotiations. *See In re Cincinnati Enquirer*, 94 F.3d 198, 199 (6th Cir. 1996). However, "there is an important distinction . . . between negotiating a settlement in the first instance and using court resources to implement a settlement that has already been agreed to." *In re S. Ohio Corr. Facility*, 24 F. App'x 520, 530 (6th Cir. 2001). The presumption of access applies where, as here, a party is using the terms of the settlement agreement in support of its right to relief. *Id.* The public has a right to know the basis for the parties' arguments, and for the Court's decision on Evoqua's right to enforce the consent judgment. Thus, the parties have not satisfied their burden of demonstrating that the settlement agreement, or the portions of their briefs concerning that agreement, should be sealed.

**B. Carve-Out Agreement**

Evoqua also argues that the Carve-Out Agreement, and the references to that agreement in its brief, should be sealed from public view because the agreement implicates the privacy rights of a third party, Siemens Industry. The parties to that agreement agreed to keep its terms confidential.

The Court will grant the motion to seal insofar as it concerns the Carve-Out Agreement itself because that agreement is not material to the Court's decision regarding Evoqua's right to enforce the consent judgment. The basis for the Court's ruling on standing does not depend in any way on the Carve-Out Agreement. However, the Court will *not* grant the request to seal insofar as it concerns the portions of the parties' briefs that mention the Carve-Out Agreement.[3] The parties quote a

---

[3] If Evoqua attempts to enforce the settlement agreement itself, it will have to establish that it is the assignee of the agreement. That argument will necessarily require an analysis of the terms of the Carve-Out Agreement. The Court will not be able to seal the Carve-Out Agreement if called upon to determine what it means.

9

handful of provisions in the Carve-Out Agreement containing generic terms regarding the assignment of assets from Siemens Industry to Siemens Water Technologies. None of these provisions reveals any significant details about the agreement itself or the parties to it. Thus, the parties have not demonstrated that revealing any portion of their briefs will meaningfully implicate the privacy interests of Siemens Industry, let alone that such interests overcome the presumption in favor of public access to their arguments to this Court.

An order will enter in accordance with this Opinion.

Dated:     August 18, 2017              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE